UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ARAMARK SPORTS AND ENTERTAINMENT SERVICES, INC,

    Plaintiff(s),

v.

THE NATIONAL ORGANIZATION OF BLACK FARMERS, SYDNEY ROOKS and DEWAYNE BOYD,

    Defendant(s).

and

SYDNEY ROOKS,

    Third-Party Plaintiff

v.

JOHN CONYERS, JR.

    Third-Party Defendant

_____/

CASE NUMBER: 99-76391

HONORABLE VICTORIA A. ROBERTS

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THIRD-PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. Introduction

This breach of contract action is before the Court on Plaintiff Aramark Sports and Entertainment Services, Inc's Motion for Summary Judgment and Third-Party Defendant

John Conyers, Jr.'s Motion for Summary Judgment. Both Motions are filed pursuant to Fed. R. Civ. P. 56. Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In reviewing a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986).

The movant has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant meets this burden, the nonmoving party must, by affidavit or otherwise as provided by Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252. If the nonmoving party does not respond with facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989).

In this case, Defendants National Organization of Black Farmers ("NOBF"),

2

DeWayne Boyd and Sydney Rooks have all failed to respond to the pending Motions for Summary Judgment. Nonetheless, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir.1991). The moving party must always bear the initial burden of demonstrating the absence of a genuine issue of material fact, even if the party fails to respond. *Id.* at 454-455. "The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden." *Id.* at 455. *Accord Stough v. Mayville Community Schools*, 138 F.3d 612 (6th Cir.1998).

In this case, the Court finds that Aramark has met its burden; there is no question that Defendants are liable to Aramark for breach of contract. On the other hand, Conyers has failed to meet his burden of demonstrating the absence of a genuine issue of material fact. To the contrary, the evidence shows that Rooks' liability arose out of actions taken in the course of her employment with Conyers and that Rooks was acting at the direction of Conyers.

## II. Background

Aramark is a catering service that caters conventions held at the Ernest N. Morial Convention Center in New Orleans, Louisiana. Consequently, when the NOBF was planning the Second National Black Farmers Conference, to be held at the Morial Convention Center on May 21 and 22, 1999, it contracted with Aramark to provide what came to a total of $102,085.50 in catering services. The catering contract was signed by Rooks as the Vice-

3

President and General Counsel of the NOBF. Boyd, who acted as President of the NOBF, signed the two checks that were made out to Aramark to fulfill NOBF's obligations under the contract. Both checks were rejected by the bank due to insufficient funds. This lawsuit followed.

## III. Analysis

### A. Aramark's Motion for Summary Judgment

There is no question in this case that the NOBF breached its contract with Aramark by paying Aramark with checks worth $102,085.50 on a bank account that did not have sufficient funds. The only real question raised by Aramark's Motion is whether Rooks and Boyd may be held individually liable for breach of contract. To answer this question, Aramark cites *Campbell v. Rukamp*, 260 Mich. 43, 46; 244 N.W. 222 (1932), as holding:

> The law is well settled that: If a single individual assumes to act as a corporation and to contract as such, where there is no corporation either de jure or de facto, he will be individually liable on the contract; and individual liability will also attach to all of the stockholders or members of a pretended but nonexisting corporation on contracts entered into in its name if they have expressly or impliedly authorized the contract.

(Quotation marks and citation omitted).

In this case, Aramark was neither a de jure or de factor corporation.[1] Additionally, both Rooks and Boyd acted on behalf of the nonexisting corporation with respect to the

---

[1] See Aramark's Exhibit E, Rooks Responses to Request to Admissions, No. 6, and Exhibit F, Aramark's First Request for Admissions to Boyd, Nos. 7 & 8. This latter document was served on Boyd on May 2, 2000 but was never answered. As a result, the Request for Admissions are deemed admitted pursuant to Fed. R. Civ. P. 36(a).

4

contract at issue. Rooks signed the contract as the Vice President and General Counsel of the NOBF. Boyd was the President of the NOBF. He was primarily responsible for organizing the conference[2] and he signed the bad checks. Accordingly, Rooks and Boyd are both individually liable on the contract and Aramark's Motion for Summary Judgment will be granted.

### B. Conyers' Motion For Summary Judgment

Rooks' Third-Party Complaint alleges that her involvement in the contract at issue was at the direction of Conyers, a United States Congressional Representative. Both Rooks and Boyd were on Conyers' staff. Rooks served in the capacity of Legal Counsel, and Boyd was a Legislative Aid. Rooks alleges that all actions performed by her in connection with the second National Black Farmer's Conference were undertaken at Conyers' request and under his direction and authority during and in the course and scope of her employment with Conyers and as his agent.

In his Motion for Summary Judgment, Conyers argues that he cannot be held liable under a theory of apparent agency and apparent scope of employment, citing *Leitch v. Switchenko*, 169 Mich.App. 761; 426 N.W.2d 804 (1988) in support.[3] However, Rooks'

---

[2]Conyers' Exhibit 1.

[3]The *Leitch* court stated, "[T]he concept of 'apparent scope of employment,' like apparent authority in the agency context, is based upon conduct of the employer which leads a third party to reasonably believe that the employee's actions were taken on behalf of the employer. The critical factors are the employer's conduct and the third party's reasonable belief." *Leitch* at 766.

allegation is not that she was acting in the "apparent" scope of employment; she argues that she was acting in the actual scope of her employment. And, viewing this evidence in a light most favorable to Rooks, the evidence appears to back up that allegation and to refute Conyers' allegation that the contract at issue was solely for the benefit of the NOBF.

According to a February 5, 1999 memorandum from Rooks to Conyers and his Chief of Staff, Ray Plowden, Conyers specifically asked Rooks to help arrange the conference. "On February 1st, Mr. Conyers asked me to assist DeWayne in making arrangements for the Second National Black Farmers' Conference...which will be held in New Orleans on May 21 and 22, 1999. Specifically, I'm providing support on the public and government relations and the international aspects of the project."[4] Additionally, Conyers directed Rooks to assist Boyd in establishing the NOBF as a Michigan non-profit corporation. "As Mr. Conyers' requested, I have prepared Michigan Non-Profit Corporate Articles of Incorporation for DeWayne to review and file so that his organization (the National Organization of Black Farmers) is based in this state...."[5] Conyers further directed that Rooks take on the roles of an officer and General Counsel to NOBF. In a February 1, 1999 memorandum to Boyd, Rooks wrote, "The Congressman asked me to advise you that he wants me to be an officer/director of your organization and to act as its General Counsel for the first year or so

---

[4] Conyers' Exhibit 1.

[5] *Id.* Although Rooks gave Boyd the necessary papers, he never filed them.

6

as it gets off the ground."[6]

There is also evidence that Conyers and his office were heavily involved in the planning and promotion of the conference. For example, an invitation drafted on Conyers' letterhead describes Conyers as the convener of the conference. "As convener of the 2nd National Black Farmers' Conference (NBFC), it gives me great pleasure to have this opportunity to request that you attend this very special event."[7] The letter concludes by directing invitees to call Boyd or Rooks at Conyers' office phone number if they have any questions.[8]

A flyer regarding the conference states that it was being convened by Conyers and Congressman William Jefferson. The bottom of the flyer invites its recipients to contact Boyd or Rooks at Conyers' office or to "visit us on the internet at www.conyers-report.org."[9] Additionally, a press release regarding the conference that is drafted on Conyers' stationary describes Conyers and Jefferson as the conveners and relegates the NOBF to the role of a supporter. "'I'm very happy that my good friend Congressman William J. Jefferson is joining me in convening this conference with the support of New Orleans Mayor Marc H.

---

[6] Conyers' Exhibit 2.

[7] Third-Party Complaint at Exhibit B.

[8] *Id.*

[9] *Id.*

Morial and the National Organization of Black Farmers,' Conyers stated."[10]

More evidence that Conyers was deeply involved with the conference is found in materials that the attendees received. A greeting letter from Conyers to the attendees is on Conyers' letterhead and features his picture.[11] Further, a flyer describing the coordinators of the conference lists Boyd in his capacities as both the President of the NOBF and Legislative Assistant to Conyers. Rooks is listed only in her capacity as Legal Counsel to Conyers.[12]

In summary, the documentary evidence supports Rooks' contention that Conyers directed Rooks to participate in the planning of the conference; that Conyers directed Rooks to act in the capacity of an officer and General Counsel of the NOBF; that the conference was organized out of Conyers' office; and that Conyers was the central figurehead of the conference. The evidence refutes Conyers' allegations that NOBF was acting only on its own behalf, for its own benefit, and that Rooks was acting solely in her capacity as Vice President and Legal Counsel for the NOBF. It does appear that she acted in her capacity as Legal Counsel to Conyers, in the course of her employment with Conyers, and at his direction.

While citing *Leitch, supra.*, in support of his Motion for Summary Judgment, Conyers

---

[10]*Id.*

[11]Third-Party Complaint at Exhibit C.

[12]*Id.*

neglected to refer to the portion of that opinion stating that an employer may be held liable for the actions of its employee that are conducted within the scope of his or her employment: "As a general rule, an employer may be vicariously liable for the intentional torts of an employee if the tort is committed in the course and within the scope of the employee's employment...Liability under this doctrine may also be based on a finding that the employee was acting within the apparent scope of his employment." *Leitch* at 765. The *Leitch* court continued that summary judgment is appropriate in these circumstances only where is is apparent that the employee is acting to accomplish a purpose of his own. *Id.*

The evidence does not indicate that Rooks was acting to accomplish a purpose of her own. The evidence is clear here that Rooks was employed by Conyers and that her actions on behalf of the NOBF were conducted within the scope of her employment.

Conyers does raise one valid question. He points out that, normally, it is the injured third-party who seeks to take advantage of vicarious liability. However, no cases have been cited by Conyers which would preclude a third party action involving allegations such as the ones set forth by Rooks in her third party complaint. The Court does not know whether an employee may seek indemnification from an employer when that employee is held liable for actions that were directed by the employer. Conyers' Motion for Summary Judgment does not answer that question. However, the evidence does present a sufficient disagreement to require submission of these matters to a jury. Conyers" Motion will, therefore, be denied..

IV. **Conclusion**

9

For the reasons stated above, **THE COURT HEREBY GRANTS** Plaintiff Aramark's Motion for Summary Judgment [document 20], and awards **Judgment in its favor and against Defendants in the amount of $102,085.50, plus costs, interests and attorney fees. The Court DENIES** Third-Party Defendant Conyers' Motion for Summary Judgment [document 22].

Dated: SEP 15 2000

*Victoria A. Roberts*
VICTORIA A. ROBERTS
UNITED STATES DISTRICT JUDGE